IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMIE ADAMS *o/b/o*
H.C.P., *a minor child*                                    PLAINTIFF

            v.                        CIVIL NO. 15-5307

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                            DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jamie Adams, brings this action on behalf of her minor daughter, H.C.P.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying H.C.P.'s application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

## I.      Procedural Background:

Jamie Adams protectively filed the application for SSI on her minor daughter H.C.P.'s

behalf on October 31, 2012, alleging that H.C.P., who was a school-age child when the

application was filed, is disabled due to hypertension.  (Doc. 10, pp. 47, 121).   An

administrative video hearing was held on October 22, 2013, at which, appeared with counsel

and testified.  (Doc. 10, pp. 30-46).

The ALJ, in a written decision dated March 25, 2014, found that H.C.P. had the

following severe impairments: cardiovascular disorder (hypertension) and a genitourinary

disorder (anomalies of the urinary system, vesicourethral reflex). (Doc. 10, p. 17).  However,

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

the ALJ further found that as H.C.P. did not have an impairment or combination of impairments that was medically or functionally equal to a listed impairment, H.C.P. was not disabled. (Doc. 10, pp. 17-18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on October 23, 2015. (Doc. 10, pp. 4-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and this case is before the undersigned pursuant to the consent of the parties. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). In the present case, the ALJ found that H.C.P.'s claim failed at step three, as H.C.P. did not have an impairment that met or medically or functionally equaled a listed impairment.

The Court finds there is substantial evidence in the record to support the ALJ's determination that H.C.P.'s impairments did not meet or medically equal in severity any listed impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B. The Court next addresses whether H.C.P.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [H.C.P.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a (a). Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations[1] in one of the following

---

[1] 20 C.F.R. § § 416.926a(e)(2) and (3) (2)Marked limitation -(I)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean....

(3)Extreme limitation - (I) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

"domains:" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. § § 416.926(b)(1), 416.926a(d). The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P. In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.9249.

### III.    Discussion:

In the March 25, 2014, administrative decision, the ALJ gave significant weight to Dr. Stephen A. Whaley's March 24, 2013, Childhood Disability Evaluation. Dr. Whaley opined that H.C.P. had no limitations with acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for yourself; and less than marked limitations in health and physical well-being. (Doc. 10, pp. 61-64).

After reviewing the record, the Court is troubled by the weight given to Dr. Whaley as subsequent medical records and a teacher questionnaire revealed that H.C.P. continued to miss school due to the headaches caused by her hypertension. Medical records completed by Dr. Mohammed Ilyas on May 9, 2013, reported that H.C.P. had quite a few headaches and a history of nose bleeds. (Doc. 10, pp. 295-308). At that visit, Plaintiff and her husband reported that they frequently had to get H.C.P. from school, almost two to three day per week, due to a pounding headache and high blood pressure. Dr. Ilyas noted that prehypertension for H.C.P

4

was 112/73, stage hypertension was 116/77 and stage IV hypertension was 128/89. On August 12, 2013, Vickie Moore, APN, noted H.C.P.'s blood pressure was 124/76. (Doc. 10, pp. 278). On August 22, 2013, H.C.P.'s blood pressure was 122/98 and on September 3, 2013, her blood pressure was 134/94. (Doc. 10, pp. 279-282). In November of 2013, Ms. Natalie Hutto, one of Plaintiff's teachers, reported that H.C.P. frequently missed school due to her illness. (Doc. 10, pp. 187-194). Ms. Hutto reported that H.C.P. also experienced anxiety that increased her blood pressure when she missed school or had difficulty understanding the material due to her absences.

Based on the foregoing, the Court finds remand necessary so that the record can be further developed regarding H.C.P's areas of development, especially in the areas of acquiring and using information, attending and completing tasks and physical health and well-being. On remand, the ALJ should direct interrogatories to obtain functional assessments from H.C.P.'s treating physician(s) for the time period in question.

## III.   Conclusion:

Based on the foregoing, we hereby reverse the decision of the Commissioner and remand this case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 1st day of May, 2017.

/s/   *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE